**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

MICHAEL WILLIAMSON,

        Plaintiff,

        v.

AVIDIA BANCORP, INC., and KEEFE,
BRUYETTE & WOODS, INC.,

        Defendants.

Civil Action No. 25-cv-13410-AK

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT KEEFE, BRUYETTE & WOODS, INC.'S MOTION TO DISMISS[1]**

Plaintiff Michael Williamson ("Plaintiff' or "Mr. Williamson") respectfully submits this memorandum in opposition to Defendant Keefe, Bruyette & Woods, Inc.'s ("Defendant" or "KBW") motion to dismiss the Complaint.

**PRELIMINARY STATEMENT**

KBW is a sophisticated investment bank that maintains an office in Massachusetts, deliberately cultivated business here, and played a central role in a Massachusetts bank's stock offering which was governed by Massachusetts law and aimed at Massachusetts depositors. Having embedded itself in the Commonwealth's financial marketplace, KBW now insists that it somehow floated above the forum, untouched by its laws or courts. The doctrine of personal jurisdiction exists to protect defendants from being haled into court in unfamiliar forums. It does not exist to reward legal gaslighting from a defendant who, after taking full advantage of Massachusetts' economy, now claims it cannot be held to account here for its work here.

---

[1] This Opposition has been prepared with support from the Boston College Law School Federal Court Clinic. Pursuant to this Court's Standing Order (Doc. No. 4), if argument is granted, it may be conducted by a student in the Clinic.

KBW bends the doctrine of personal jurisdiction far past its breaking point. Its two material arguments, that it is not reached by Massachusetts' long-arm statute and that its contacts with Massachusetts were unrelated to Plaintiff's injury, each fail on their face. Massachusetts' long-arm statute permits jurisdiction over KBW because its business in Massachusetts was a but-for cause of Mr. Williamson's harm. And relatedness is satisfied because there is a demonstrable nexus between KBW's contacts with Massachusetts and Plaintiff's injury.

KBW's arguments lack any legal or factual support. It relies on irrelevant and inapposite case law (sometimes no case law at all), misquotes its cited authorities, and moves the goalposts to prop up its vacuous arguments. KBW's argument can be boiled down to one sentence: every important event occurred in some other jurisdiction. But that argument is untethered from reality. KBW led the effort to take Avidia (a Massachusetts bank) public, providing wide-ranging strategic and administrative services in support of that effort in Massachusetts. The nucleus of the entire operation—and therefore the nucleus of this dispute—is in Massachusetts. With no basis in law or fact, KBW's motion to dismiss must be denied.

## BACKGROUND

This dispute is about Avidia Bancorp, Inc. ("Avidia") and KBW's successful efforts to prevent Plaintiff from exercising his right to purchase stock in Avidia Bank, a Massachusetts-based bank. (Am. Compl. ¶ 1, Doc No. 9.) Despite actually receiving and opening Plaintiff's stock order in New Jersey, Avidia and KBW ignored it. (*Id.* ¶ 34–35.) Avidia and KBW each enriched themselves by ignoring Plaintiff's order, KBW by earning more fees and Avidia by raising more capital. (*Id.* ¶ 36–37.) Because Avidia's stock price has increased substantially since the offering, Plaintiff has lost out on hundreds of thousands of dollars. (*Id.* ¶ 76.) In addition to the facts contained in the Amended Complaint, "on a motion to dismiss for lack of personal jurisdiction,

the court may consider facts outside of the complaint." *Shirokov v. Dunlap, Grubb & Weaver, PLLC*, No. 10-12043, 2012 WL 1065578, at *8 (D. Mass. Mar. 27, 2012).[2]

### I.    KBW Was Instrumental in Avidia's Mutual-to-Stock Conversion and Hundred-Million Dollar Equity Offering.

Plaintiff was a depositor at Avidia Bank for over a decade, which was a Massachusetts-chartered mutual bank headquartered in Hudson, Massachusetts. (Am. Compl. ¶ 2.) In 2025, Avidia Bank announced its intention to convert from a mutual bank, owned by its depositors, to a stock-based corporation, owned by its shareholders (the "Conversion").[3] In connection with the Conversion, Avidia offered shares of its common stock for sale to Avidia's depositors (the "Subscription Offering"). Avidia retained KBW, an investment bank and registered broker-dealer to provide various services in connection with the Conversion and the Subscription Offering (together, the "Avidia Transaction"). KBW's role in the Avidia Transaction is outlined in a series of engagement letters and agency agreements executed jointly with Avidia.[4]

Specifically, KBW agreed to act as the "exclusive financial advisor" and the "Conversion Agent and Data Processing Records Management Agent" for the Avidia Transaction.[5] The services that KBW agreed to provide under its agreements with Avidia were extensive. Among other things, KBW's work as the exclusive financial advisor to the Avidia Transaction included: "[p]roviding advice on the financial and securities market implications of the Conversion," "[a]ssisting in structuring the Offerings, including developing and assisting in implementing a marketing strategy for the Offerings," "[s]erving as the sole bookrunning manager" in connection with the

---

[2] Because the evidence supporting personal jurisdiction over KBW is extremely voluminous, Plaintiff has chosen to cite to it in footnotes with reference to electronically available versions of the documents. Should it benefit the Court, Plaintiff is happy to provide an addendum or exhibit of all cited material.

[3] *See* Avidia Bancorp, Inc. Form S-1 Registration Statement (Mar. 14, 2025), https://www.sec.gov/Archives/edgar/data/2058758/000119312525054732/d923214ds1.htm.

[4] *Id.* at Exhibit 1.1, 1.2.

[5] *Id.* at Exhibit 1.1.

Subscription Offering and any subsequent offerings, "[a]ssisting [Avidia] in preparing for and scheduling meetings with potential investors and broker-dealers," meeting with Avidia's board of directors and management to discuss KBW's services, and "[p]erforming such other financial and investment banking services in connection with [the Avidia Transaction]" as needed.[6] KBW and Avidia's agreement contemplated a long-term relationship even beyond the Avidia Transaction.[7] And, as especially relevant here, KBW agreed that it would "assist [Avidia] in the stock offering by, among other things … establish[ing], manag[ing] and supervis[ing] the Stock Information Center" where the stock order forms for the Offering, including Plaintiff's, were to be processed.[8]

## II.       **KBW Has a Long-Standing, Lucrative Relationship With Massachusetts.**

KBW is incorporated in and has its principal place of business in New York, but its relationship with Massachusetts spans over fifty years. KBW first registered to do business in Massachusetts in 1976.[9] In its Agency Agreement with Avidia, KBW represented and warranted that it is "licensed to conduct business in the Commonwealth of Massachusetts[.]"[10] Several of KBW's Boston-based employees are registered with the Financial Industry Regulatory Authority ("FINRA") to do work for KBW in Massachusetts.[11] KBW maintains an office in Boston at 125 High Street, Boston MA 02110.[12] In at least 2011,[13]

---

[6] *Id.* at Exhibit 1.1.

[7] *Id.* at Exhibit 1.1 ("KBW further agrees to provide general financial advisory assistance to the Company that is not in the context of any contemplated transaction, for a period of three years following completion of the Conversion and the Offerings[.]").

[8] *Id.* at 122–23.

[9] Secretary of the Commonwealth of Massachusetts, Business Entity Summary for Keefe Bruyette & Woods, Inc., Identification Numbers 131964616 and 000619602.

[10] Exhibit 1.3, Agency Agreement between Avidia Bancorp, Inc. and Keefe, Bruyette & Woods, Inc., p. 19 https://www.sec.gov/Archives/edgar/data/2058758/000119312525096323/d923214dex13.htm.

[11] *See, e.g.*, Brian Estephan, https://brokercheck.finra.org/individual/summary/2939689 (last visited Feb. 10, 2026) and Andrew Andreatta, https://brokercheck.finra.org/individual/summary/5937999 (last visited Feb. 10, 2026).

[12] Keefe, Bruyette & Woods, *Our Offices*, https://www.kbw.com/our-offices/ (last visited Feb. 10, 2026).

[13] Columbia Banking System, *Columbia Banking System to Present at the Keefe, Bruyette & Woods Boston Bank Conference on March 1, 2011* (Mar. 1, 2011), https://www.columbiabankingsystem.com/news-market-data/press-

2012,[14] 2013,[15] and 2014[16] KBW hosted the "Keefe, Bruyette & Woods Boston Bank Conference." KBW is a repeat player in advising Massachusetts banks on their mutual-to-stock conversions, public and private offerings, mergers, acquisitions, and other transactions, including: (a) Brookline Bancorp's acquisition of First Commons Bank in 2017;[17] (b) Eastern Bankshares' $1.7 billion dollar offering and conversion in 2020;[18] (c) ECB Bancorp's ("Everett Bank") $89 million dollar offering in 2022;[19] (d) Hometown Financial Group's acquisition of Randolph Bancorp in 2022;[20] and (e) 1831 Bancorp's ("Dedham Savings") merger with Southshore Bancorp in 2024.[21]

KBW's local connections in Massachusetts are essential to its business model. As KBW has said itself, its "investment banking practice is based on long-term relationships developed by the department's professionals operating from offices in New York, London, Boston," and other locations, and that its local offices are "positioned to identify local and regional opportunities and

---

[14] releases/press-release/2011/Columbia-Banking-System-to-Present-at-the-Keefe-Bruyette--Woods-Boston-Bank-Conference-on-March-1-2011/default.aspx.

[14] PR Newswire, *F.N.B. Corporation to Present at the 2012 Keefe, Bruyette & Woods Boston Bank Conference* (Feb. 24, 2012), https://www.prnewswire.com/news-releases/fnb-corporation-to-present-at-the-2012-keefe-bruyette--woods-boston-bank-conference-140351153.html.

[15] First National Bank, *F.N.B Corporation Executive to Present at 2013 Keefe, Bruyette & Woods Boston Bank Conference* (Feb. 25, 2013), https://www.fnb-online.com/about-us/newsroom/press-releases/2013/fnb-executive-to-present-at-the-2013-keefe-bruyette-and-woods-boston-bank-conference.

[16] Trustmark, *Trustmark Corporation's CEO to Address Keefe, Bruyette & Woods Boston Bank Conference* (Feb. 21, 2014), https://investorrelations.trustmark.com/news-events/press-releases/news-details/2014/Trustmark-Corporations-CEO-to-Address-Keefe-Bruyette--Woods-Boston-Bank-Conference/default.aspx.

[17] Nerej, *Brookline Bancorp and First Commons Bank sign merger agreement to acquire First Commons Bank* (Oct. 13, 2017), https://nerej.com/brookline-bancorp-and-first-commons-bank-sign-merger-agreement-to-acquire-first-commons-bank.

[18] Eastern Bank, *Eastern Bankshares, Inc. Announces Receipt of Regulatory Approvals, Closing Date of Conversion and Final Results of Stock Offering* (Oct. 9, 2020), https://www.easternbank.com/newsroom/eastern-bankshares-inc-announces-receipt-regulatory-approvals-closing-date-conversion-and.

[19] Renaissance Capital, *Massachusetts bank ECB Bancorp raises $89 million in subscription rights offering* (Jul. 27, 2022), https://www.renaissancecapital.com/IPO-Center/News/93870/Massachusetts-bank-ECB-Bancorp-raises-$89-million-in-subscription-rights-of.

[20] Hometown Financial Group, *Hometown Financial Group, Inc. to Acquire Randolph Bancorp, Inc.* (Mar. 28, 2022), https://www.bankhfg.com/news/2022/3/28/hometown-financial-group-inc-to-acquire-randolph-bancorp-inc.

[21] Dedham Savings, *1831 Bancorp, MHC and South Shore Bancorp, MHC Transaction Completed* (Jan. 10, 2024), https://www.dedhamsavings.com/1831-bancorp-mhc-and-south-shore-bancorp-mhc-transaction-completed/.

provide clients with locally-based services."[22] KBW's work in Massachusetts is extremely lucrative. For example, in exchange for its work on Eastern Bankshares' offering, it received a fee of at least 0.50% of the total volume of common stock sold in the subscription and community offerings.[23] Eastern Bankshares estimated that the minimum "selling agent fees and expenses and underwriters' compensation" would be $23,346,979.[24]

## LEGAL STANDARD

In an action premised on diversity jurisdiction such as this one, there are two questions guiding the court's exercise of personal jurisdiction over a defendant. First, whether the Massachusetts long-arm statute, Mass. Gen. Laws. ch. 223A, § 3, authorizes jurisdiction over the defendant, and second, whether exercising jurisdiction comports with due process. *See Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 95 (1st Cir. 2024). When a court assesses whether it has personal jurisdiction over a defendant without an evidentiary hearing, the prima facie standard applies, requiring the plaintiff to show only by a preponderance of the evidence that jurisdiction exists. *See McCloskey v. PredictiveGenies, Inc.*, No. 24-12846, 2025 WL 1208543, at *1–2 (D. Mass. Apr. 25, 2025) (Kelley, J.) (explaining that the court accepts the plaintiff's evidentiary proffers as true and considers them in the light most favorable to the plaintiff's jurisdictional claim); *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007) (noting that any evidence the defendant offers "become[s] part of the mix only to the extent that [it is] uncontradicted").

Massachusetts' long-arm statute provides, in pertinent part, that "[a] court may exercise personal jurisdiction over a person . . . as to a cause of action in law or equity arising from the

---

[22] KBW, Inc., Form S-1 Registration Statement, p. 64 (Oct. 23, 2006),
https://www.sec.gov/Archives/edgar/data/1063494/000104746906012993/a2172961zs-1a.htm.
[23] Eastern Bankshares, Inc., Form S-1 Registration Statement, p. 158 (June 18, 2020),
https://www.sec.gov/Archives/edgar/data/1810546/000119312520172003/d846554ds1.htm.
[24] *Id.* This information is included on the second unnumbered page of Eastern Bankshares' Form S-1.

person's (a) transacting any business in this commonwealth; [or] (b) contracting to supply services or things in this commonwealth[.]" Mass. Gen. Laws. ch. 223A, § 3(a)-(b). Courts construe subsection (a) generously, asking only "whether the defendant[s] attempted to participate in the commonwealth's economic life." *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1087 (1st Cir. 1992). "In deciding whether a claim 'aris[es] from' a defendant's 'transacting business,' [courts] look to see whether the transacted business was a 'but for' cause of the harm alleged in the claim." *Cossart v. United Excel Corp.*, 804 F.3d 13, 18 (1st Cir. 2015) (citation omitted). "Of course, a causal chain may consist of a sequence of necessary conditions or events, resulting in multiple but-for causes[.]" *Doe v. Rhode Island Interscholastic League*, 137 F.4th 34, 42 (1st Cir. 2025). As the Supreme Court has explained, "a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020).

Just as with subsection (a), in subsection (b) "the phrase 'contracting to supply services or things in this commonwealth' must be read together with the prior phrase, 'cause of action arising from.'" *Singer v. Piaggio & C.*, 420 F.2d 679, 681 (1st Cir. 1970). Whether or not a claim 'arises from' a defendant's actions in contracting to supply services in the Commonwealth is simply a question of whether those actions were a but-for cause of the claim. *See Cossart*, 804 F.3d at 18.

After considering the forum's long-arm statute, the court then looks at whether exercising jurisdiction comports with due process. There are two types of personal jurisdiction: general and specific. *Id.* at 20. As relevant to this case, to determine whether the court has specific jurisdiction over an out-of-state defendant it evaluates "(1) whether the claim directly arises out of, or relates to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state … making the

defendant's involuntary presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction is reasonable." *Id.* (citation omitted).

**ARGUMENT**

This Court has personal jurisdiction over KBW because it is reached by the Massachusetts long-arm statute and exercising jurisdiction comports with due process.

### I.      Section 3(a) and 3(b) of the Long-Arm Statute Allows Jurisdiction Over KBW.

KBW's role in the Avidia Transaction falls under both Section 3(a) and 3(b) of Massachusetts' long-arm statute because 'but-for' KBW's lucrative work and contracts for services in Massachusetts, Plaintiff would not have been injured. *See Cossart*, 804 F.3d at 18.

Section 3(a) permits jurisdiction over KBW because this lawsuit arises from KBW doing business in the Commonwealth. KBW engaged in business in the Commonwealth that resulted in Plaintiff's harm. It provided extensive, complex, and highly-compensated services for the Avidia Transaction—services which it regularly provides for other Massachusetts banks. And that work in Massachusetts for Avidia was a but-for cause of Plaintiff's harm. *See id*. There can many but-for causes, *R.I. Interscholastic League*, 137 F.4th at 42, and if removing an event in the causal chain results in a different outcome, that event is a but-for cause. *See Bostock*, 590 U.S. at 656.

Here, KBW's work in Massachusetts, including advising Avidia on the market implications of the Avidia Transaction, assisting with structuring and marketing the Subscription Offering, reviewing and processing all Subscription Offering documents including the prospectus and stock order forms was a but-for cause of Mr. Williamson's harm.[25] If KBW never worked on the Avidia Transaction in Massachusetts, it never would have set up the Stock Information Center in New

---

[25] *See* Avidia Bancorp, Inc. Form S-1 Registration Statement, p. 121–22 (Mar. 14, 2025), https://www.sec.gov/Archives/edgar/data/2058758/000119312525054732/d923214ds1.htm.

Jersey, and Plaintiff's harm would not have occurred. After all, there is no need to set up a stock order office if you are not in the business of selling stock. Because this dispute arises from KBW's business in Massachusetts, the requirements of Section 3(a) are satisfied in this case.

Alternatively, Section 3(b) permits jurisdiction over KBW because this lawsuit arises from KBW contracting to supply services in Massachusetts. KBW's Agency Agreement with Avidia is a contract for services in Massachusetts.[26] And that contract for services was also a but-for cause of Mr. Williamson's harm, just one link up the causal chain from KBW's business activities in the forum. If KBW did not contract to provide services to Avidia in Massachusetts, it would not have provided the services contemplated in that contract. If it did not provide those services for the Avidia Transaction in Massachusetts, it would never have set up the Stock Information Center in New Jersey, and Plaintiff's harm would not have occurred. Because this dispute arises from KBW's contract for services in Massachusetts, Section 3(b) is satisfied.

> **A.** **Courts Apply Sections 3(a) and 3(b) of the Long-Arm Statute to Advisors That Provide Services to a Client in Massachusetts Entirely From Another State.**

An out-of-state business that provides advisory services to a client in Massachusetts pursuant to a contract is subject to both Section 3(a) and 3(b) of the long-arm statute, even when the services only have an attenuated relationship to the plaintiff's injury. *See In re TelexFree Sec. Litig.*, 626 F. Supp. 3d 253, 280–82 (D. Mass. 2022). In *TelexFree*, a civil securities fraud case arising out of TelexFree's pyramid scheme, the plaintiffs asserted claims against companies that provided services to TelexFree, a Massachusetts-based company. One of the defendants, the Sheffield Group, provided business consulting services to TelexFree remotely from Arizona under

---

[26] Exhibit 1.3, Agency Agreement between Avidia Bancorp, Inc. and Keefe, Bruyette & Woods, Inc., https://www.sec.gov/Archives/edgar/data/2058758/000119312525096323/d923214dex13.htm.

an agreement which acknowledged that TelexFree was based in Massachusetts. *Id.* at 280–81. Section 3(a) of the long-arm statute applied to Sheffield's work because, by advising a company in Massachusetts, it "attempted to participate in the commonwealth's economic life." *Id.* at 281 (citation omitted). Section 3(b) also applied because even though Sheffield advised TelexFree remotely from Arizona, it "in effect delivered this advice to Massachusetts, for use in Massachusetts." *Id.*

Sheffield's role in the TelexFree fraud was attenuated at best, but the court had no problem finding that the plaintiffs' fraud claims arose from Sheffield's limited consulting services. *Id.* Sheffield's services helped TelexFree operate its business smoothly, thereby indirectly facilitating the scheme. *See id.* But for Sheffield's consulting work, the court reasoned, TelexFree may not have been able retain the plaintiffs' business. *Id.* And had the plaintiffs pulled out of TelexFree early, they would not have suffered financial loss when it eventually collapsed. *Id.*

Here, Section 3(a) applies because KBW "attempted to participate in the commonwealth's economic life" by advising a Massachusetts bank on a multi-million-dollar transaction. *See id.* Section 3(b) applies because KBW contracted with Avidia to provide strategic advice and other services which it "in effect delivered . . . to Massachusetts, for use in Massachusetts." *See id.* KBW's causal role in Plaintiff's injury is even more direct than Sheffield's in *TelexFree*. *See id.* More than just facilitating its operation, KBW's work was at the center of the Avidia Transaction. And but for that central role, KBW would not have operated the Stock Information Center in New Jersey, and Plaintiff's injury would not have occurred.

### B.    KBW's Primary Authority, *Singer*, Offers No Support and Exposes the Flaws in Its Argument.

KBW's heavy reliance on *Singer v. Piaggio & C.*, a case over five decades old, to support its long-arm statute arguments is unavailing. 420 F.2d 679 (1st Cir. 1970); (Def.'s Memo., 6–7, Doc. No. 15). In *Singer*, a Pennsylvania citizen was hurt in Florida while riding a Vespa scooter manufactured in Italy. 420 F.2d at 680. The plaintiff argued the Italian manufacturer "contract[ed] to supply services or things" in Massachusetts within the meaning of the long-arm statute because it sold scooters to a Massachusetts corporation under a franchise agreement. *Id.* at 681. But because the plaintiff's scooter was not one of the scooters sold in Massachusetts under that agreement, the plaintiff's injury did not arise from the manufacturer's contract in Massachusetts. *Id.*

KBW tries to contort *Singer* to fit the facts of this case, arguing that somehow Plaintiff's claims do not arise out of any services that KBW contracted to provide Avidia in Massachusetts. But Avidia's Form S-1 belies this point: "[w]e have ***also*** engaged KBW to serve as conversion and records management agent ***in connection with*** the conversion and stock offering. In its role as conversion and records management agent, KBW will ***assist us in the stock offering by***, among other things: … establish[ing], manag[ing] and supervis[ing] the Stock Information Center[.]" (emphasis added).[27] As Defendants acknowledge, KBW's operation of the Stock Information Center was incident to the services that KBW provided to Avidia in Massachusetts. KBW attempts to excise its operation of the Stock Information Center from the broader context of its leading role in the Avidia Transaction to shoehorn this case into the facts of *Singer*. But like trying to fit a square peg in a round hole, try as it might, KBW gets nowhere.

---

[27] Avidia Bancorp, Inc. Form S-1 Registration Statement, p. 122–23 (Mar. 14 2025), https://www.sec.gov/Archives/edgar/data/2058758/000119312525054732/d923214ds1.htm.

KBW also relies on *Singer* in its two-sentence argument that Section 3(a) of the long-arm statute does not authorize jurisdiction in this action because "[e]very relevant event of any importance . . . occurred in some other jurisdiction." (Def.'s Memo., 7) (quoting *Singer*, 420 F.2d at 681). But that is not true, nor does it matter. KBW agreed to provide Avidia comprehensive strategic, financial, marketing, and logistical services in connection with the Transaction. That work, of course, occurred in Massachusetts. *See TelexFree*, 626 F. Supp. 3d at 281 (providing business consulting services to a company in Massachusetts constitutes the transaction of business in Massachusetts, even when those services are provided from another state). And there is no requirement that the injury—or any particular event—occur in Massachusetts. *See Doucet v. FCA US LLC*, 492 Mass. 204, 209 (2023) ("The fact that the injury occurred out of State did not mean the injury did not arise from those business transactions in Massachusetts[.]"). The Supreme Judicial Court's opinion in *Doucet v. FCA US LLC* makes this clear. In *Doucet*, a New Hampshire resident was injured in a car crash in New Hampshire while driving a car that he purchased in New Hampshire. *Id.* at 205. He sued the car's manufacturer in Massachusetts. *Id.* The defendant manufacturer first sold the car to a dealership in Massachusetts. *Id.* at 206. The car passed through four Massachusetts residents before a New Hampshire resident bought it and sold it to Doucet. *Id.* The manufacturer argued that the connection between Doucet's claim and the original sale in Massachusetts was too tangential to satisfy the causation requirement of the long-arm statute because so many of the subsequent events—Doucet's purchase of the vehicle and the accident— happened outside of Massachusetts. *Id.* at 210. The Supreme Judicial Court nonetheless found that the causation requirement was satisfied because the manufacturer's "extensive business transactions in Massachusetts," which included the original sale of plaintiff's car, constituted "the first step in a train of events that result[ed] in the [] injury." *Id.* (citation omitted).

Here, KBW's engagement with a Massachusetts bank was the first step in the train of events that led to Plaintiff's injury. KBW agreed to work on the Avidia Transaction. In connection with its other work on the Transaction, KBW operated the Stock Information Center in New Jersey. And KBW rejected Plaintiff's stock order form at that facility. The only reason Mr. Williamson sent his order form to the Stock Information Center—the only reason the Stock Information Center existed at all—was to facilitate the Avidia Transaction in Massachusetts. But for KBW's engagement with Avidia, Plaintiff's stock order form would not have been rejected by KBW in New Jersey.

## II.    Exercising Specific Jurisdiction Over KBW Comports With Due Process.

The exercise of specific jurisdiction comports with due process when: (1) the claim arises out of or relates to the defendant's forum state activities, (2) the defendant has purposefully availed itself of the privilege of conducting activities in the forum state, and (3) the exercise of jurisdiction is reasonable. *See A Corp. v. All American Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016). "[T]he touchstone of due process is that the defendant must 'have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 122 (1st Cir. 2022) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). KBW argues that it offends "traditional notions of fair play and substantial justice" to subject an investment bank to suits in Massachusetts when it: (1) regularly does business in Massachusetts; (2) has an office in Boston; (3) worked on a hundred-million-dollar transaction in Massachusetts; and (4) is sued for its work on that transaction. *Int'l Shoe Co.*, 326 U.S. at 316. But common sense suggests—and the law compels—the opposite conclusion. It is hard to imagine a more appropriate forum for KBW to litigate a case arising from its work on the Avidia Transaction than Massachusetts.

A.      **Relatedness is Satisfied Because Plaintiff's Claims Both "Arise Out Of" and "Relate To" KBW's Activities in Massachusetts.**

As KBW admits, relatedness is a "flexible, relaxed standard[.]" (Def.'s Memo., 9.) The phrase at the core of the relatedness analysis, that the suit must "arise out of or relate to the defendant's contacts with the forum[,]" offers two independently sufficient paths to relatedness—the first coming from the phrase "arise out of," and the second coming from the phrase "or relate to." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) (citation omitted) ("The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."); *see Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, No. 21-11269, 2024 WL 3696388, at *11 (D. Mass. Aug. 7, 2024) (recognizing that relatedness has two components, meeting either of which suffices).

KBW distorts the legal standard governing relatedness. Not only is *Ford Motor Co.* conspicuously absent from its memorandum, but KBW misstates the relatedness standard entirely. In its brief, KBW quotes a First Circuit case to explain that relatedness hinges on "whether the claim directly arises out of the defendant's forum state activities." (Def.'s Memo., 9) (misquoting *A Corp. v. All American Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016)). But that is not what *A Corp.* says. KBW misquotes it, omitting an entire clause from the middle of its quotation without any indication whatsoever. What *A Corp.* actually says is that relatedness focuses on "whether the claim directly arises out of**, *or relates to*,** the defendant's forum state activities." *A Corp.*, 812 F.3d at 59 (emphasis added). KBW's omission of the phrase "or relates to" materially alters the relatedness standard. As *Ford Motor Co.* explains, these three words create an additional, non-causal route to relatedness: "[t]he first half of that standard asks about causation; but the back half, after the 'or,'"—that is, the three words KBW conveniently omits from its quotation, ***or***

14

*relates to*—"contemplates that some relationships will support jurisdiction without a causal showing." 592 U.S. at 362.

"It is disappointing when a party misrepresents the holding in a case that could be binding authority over this decision[,]" as KBW's misleading articulation of the relatedness standard from the First Circuit could be here. *See Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 745 n.11 (11th Cir. 2006). And further, material inaccuracies are "especially problematic where, as here, the Defendant['s] adversary is *pro se*." *Warren v. Westchester Cnty. Jail*, 106 F. Supp. 2d 559, 565 (S.D.N.Y. 2000). KBW's incorrect and misleading articulation of the standard aside,[28] relatedness is satisfied here through either route.

### 1. Plaintiff's Claims "Arise Out Of" KBW's Contacts With the Forum.

Relatedness is a "'relaxed' prong [which] only requires Plaintiff to show that the claim has a demonstrable 'nexus' to contacts in the forum state." *McCloskey*, 2025 WL 1208543, at *5. Here, there is a demonstrable nexus between Plaintiff's claims and KBW's work in Massachusetts on the Avidia Transaction. KBW entered into an agreement with a Massachusetts bank to provide extensive support for its conversion and offerings. KBW created an ongoing connection with Massachusetts in the performance of that agreement. It agreed to review documents related to the offerings for Avidia, including the prospectus and stock order forms sent to Avidia's depositors. And, in connection with Avidia's offering, KBW agreed to establish and manage the Stock Information Center where those order forms would ultimately be processed. KBW's contacts with Massachusetts were instrumental in the formation of its agreement with Avidia and in its operation

---

[28] Beyond this material error, evaluating and responding to KBW's memorandum of law required significant additional effort because many of its citations contained errors, including referencing the wrong authority and routinely pointing to the wrong page numbers of orders and opinions. Navigating the litigation process is difficult enough for a pro se litigant without the additional burden of deciphering opposing counsel's erroneous citations.

15

of the Avidia Transaction. Plaintiff's claims arise out of these contacts: had KBW not entered into an agreement with a Massachusetts bank to handle its conversion and offerings, there would be no Stock Information Center in New Jersey, and Plaintiff would not have been deprived of his investment in Avidia. Avidia's Form S-1 articulates this causal link: "[w]e have also engaged KBW to serve as conversion and records management agent *in connection with* the conversion and stock offering. In its role as conversion and records management agent, KBW will ***assist us in the stock offering by***, among other things: … establish[ing], manag[ing] and supervis[ing] the Stock Information Center" (emphasis added).[29] KBW's work on the Avidia Transaction in Massachusetts supplies the causal nexus to Plaintiff's claims necessary to satisfy relatedness.

KBW's sole argument against relatedness is that "[e]very relevant event of any importance" occurred in another jurisdiction. (Def.'s Memo., 9.)[30] But that is not true, nor does it matter. KBW communicated with a bank in Massachusetts and entered into multiple agreements to service its offering and conversion. KBW's obligations under those agreements required constant, back and forth communications with Massachusetts (e.g., meeting with Avidia executives and management to discuss KBW's performance of its obligations, drafting press releases for Avidia regarding the offering). KBW agreed to review all documents related to the offering, including the prospectus and stock order forms which would be sent to Avidia depositors, many of whom were surely Massachusetts residents, because Avidia only has branches in Massachusetts. The Stock Information Center in New Jersey was created for the sole purpose of processing orders to purchase stock in a Massachusetts bank. Nonetheless, what matters is not

---

[29] Avidia Bancorp, Inc. Form S-1 Registration Statement, p. 122–23 (Mar. 14, 2025), (https://www.sec.gov/Archives/edgar/data/2058758/000119312525054732/d923214ds1.htm.
[30] KBW rests its argument against relatedness on this now-familiar quotation from *Singer*. But as KBW admits, this quote relates to long-arm statute jurisprudence, which is neither controlling nor relevant at the due process stage of the inquiry.

where any specific act occurred, but "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

### 2.    Plaintiff's Claims "Relate To" KBW's Contacts With the Forum.

Even if there were no causal nexus between Plaintiff's claims and KBW's contacts in Massachusetts—which there was—KBW's rejection of Plaintiff's order form in New Jersey is sufficiently related to KBW's activities in Massachusetts to satisfy the relatedness requirement. As the Supreme Court instructs, "we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.,* proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor Co.*, 592 U.S. at 362. KBW's contacts with Massachusetts are substantial and extend far beyond its work on the Avidia Transaction. KBW is a repeat player in advising Massachusetts banks on their mutual-to-stock conversions, public and private offerings, mergers, acquisitions, and other transactions. KBW does so much work in Massachusetts that it has an office in Boston. And in at least 2011, 2012, 2013, and 2014, KBW hosted the "Keefe, Bruyette & Woods Boston Bank Conference." KBW's local connections in Massachusetts are essential to its business model, because as KBW has said itself, its "investment banking practice is based on long-term relationships developed by the department's professionals operating from offices in New York, London, Boston," and other locations.[31] KBW's offices are "positioned to identify local and regional opportunities and provide clients with locally-based services."[32] Plaintiff's claims 'relate to' KBW's contacts in Massachusetts because KBW harmed Plaintiff while doing the exact thing it does regularly in Massachusetts: providing comprehensive investment banking services for Massachusetts banks.

---

[31] KBW, Inc. Form S-1 Registration Statement, p. 64 (Oct. 23, 2006),
https://www.sec.gov/Archives/edgar/data/1063494/000104746906012993/a2172961zs-1a.htm.
[32] *Id.*

**B.      KBW Purposefully Availed Itself of the Forum by Keeping an Office in Boston And Engaging in Sophisticated Work in Massachusetts.**

Purposeful availment looks at whether the defendant has voluntarily taken advantage of the forum state, reaping the benefits of doing business in it, but also "making the defendant's involuntary presence before the state's courts foreseeable[.]" *See Cossart*, 804 F.3d at 20.

KBW does not argue that it has not purposefully availed itself of the privilege of conducting business in Massachusetts, nor could it. KBW regularly conducts business in Massachusetts and keeps an office in Boston. Avidia didn't drag KBW into Massachusetts—KBW was already here, and has been for fifty years.[33] KBW has a permanent presence in Massachusetts, working on a carousel of multi-million and billion dollar transactions centered around Massachusetts financial institutions. *See C.W. Downer*, 771 F.3d 59, 66–67 (1st. Cir. 2014) (holding contractual relationship with Massachusetts bank for work performed in Massachusetts was a voluntary contact with the forum). KBW is registered to do business here. And its agreement with Avidia contemplated a long-term relationship even beyond the closing of the Avidia Transaction.[34] *See Nasuni Corp. v. ownCloud GmbH*, 607 F. Supp. 3d 82, 96 (D. Mass. 2022) (finding foreseeability satisfied where out-of-state defendant negotiated extensively with company in forum state and agreement created ongoing obligations for defendant in forum state). KBW cannot spend thirty years enmeshing itself in the commercial life of the Commonwealth, benefitting financially from its relationships with Massachusetts' citizens and institutions, just to cry prejudice at the prospect

---

[33] KBW first registered to do business in Massachusetts in 1976 and opened its Boston office in 2001. Secretary of the Commonwealth of Massachusetts, Business Entity Summary for Keefe Bruyette & Woods, Inc., Identification Numbers 131964616 and 000619602.

[34] *See* Avidia Bancorp, Inc. Form S-1 Registration Statement, Exhibit 1.1 (Mar. 14, 2025), https://www.sec.gov/Archives/edgar/data/2058758/000119312525054732/d923214ds1.htm. ("KBW further agrees to provide general financial advisory assistance to the Company that is not in the context of any contemplated transaction, for a period of three years following completion of the Conversion and the Offerings[.]").

of being held accountable for its actions here. *See Burger King v. Rudzewicz*, 471 U.S. 462, 473 (1985) ("[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities.") (citation omitted).

### C.   Exercising Personal Jurisdiction Over KBW is Reasonable.

Massachusetts is the most reasonable place to litigate this dispute. In determining whether an exercise of specific jurisdiction is reasonable, courts considers five factors, namely: "(1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest's in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Ticketmaster-New York v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994) (citing *Burger King*, 471 U.S. at 477). KBW does not identify, let alone contest, any of these factors in its brief.

First, there is no burden to KBW to appear in Massachusetts. KBW has an office in Boston and regularly hires Boston lawyers, including for its work on the Avidia Transaction.[35] Beyond the four-minute drive to the federal courthouse from its office, there is no special burden for KBW to appear in Massachusetts. *See Cossart*, 804 F.3d at 22 (no "special or unusual" burden for defendant to appear in a state in which defendant's company has an office and with which defendant has significant contact via communications sent into the forum). Second, Massachusetts has a clear interest in adjudicating a dispute arising out of a hundred-million dollar equity offering of a Massachusetts bank. Massachusetts' interest is heightened by the fact that Mr. Williamson has

---

[35] Avidia Bancorp, Inc. Form S-1 Registration Statement, p. 141 (Mar. 14, 2025), https://www.sec.gov/Archives/edgar/data/2058758/000119312525054732/d923214ds1.htm.

asserted a claim under Chapter 93A, Massachusetts' consumer protection statute. *See Sheldon v. DT Swiss AG*, 759 F. Supp. 3d 232, 246 (D. Mass. 2024) (noting Massachusetts' interest in protecting consumers, even when the injury occurs out of state). Third, Plaintiff is a resident of Sharon, New Hampshire, just north of the Massachusetts border. He previously lived in Massachusetts and has had accounts at multiple Massachusetts banks, including Avidia, making Massachusetts a convenient forum. *See id.* ("Plaintiffs have an interest in convenient relief and [the court] should 'accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience.'") (citation omitted). Fourth, the judicial system's interest in obtaining the most effective resolution of this dispute weighs strongly in favor of exercising jurisdiction. It would be inefficient to fragment this lawsuit into two parallel disputes in different forums when the dispute is centered in Massachusetts and KBW's co-defendant, Avidia, is based in Massachusetts. *See Board Americas, Inc. v. Sally Beauty Holdings, Inc.*, No. 22-10595, 2023 WL 2248890, at *5 (D. Mass. Feb. 27, 2023) (Kelley, J.) ("Finally, exercising jurisdiction here is preferable as [defendant] is already part of this litigation and the presence of the other defendant [] will prevent delay and aid the efficient administration of this case.").

## CONCLUSION

For the foregoing reasons, KBW's Motion to Dismiss should be DENIED.[36]

---

[36] As argued, KBW is subject to personal jurisdiction in this case. But if the Court is not satisfied, limited jurisdictional discovery is appropriate to allow Plaintiff to unearth certain jurisdictionally relevant facts, such as whether KBW provided its services from inside Massachusetts and whether anyone in Massachusetts instructed KBW employees in New Jersey to reject Plaintiff's order form. *See Genzyme Corp. v. Shire Hum. Genetic Therapies, Inc.*, 906 F. Supp. 2d 9, 19 (D. Mass. 2012) (Recognizing jurisdictional discovery is appropriate when Plaintiff has made "colorable case" for the existence of personal jurisdiction and has "present[ed] facts to the court which show why jurisdiction would be found if discovery were permitted.").

Respectfully submitted,

*/s/Michael Williamson*
Michael Williamson
41 Temple Road
Sharon, NH 03458
mikewillie24@gmail.com
*Proceeding Pro Se*

Dated: February 17, 2026

## CERTFICATION OF SERVICE

I, Michael Williamson, the Plaintiff in this action, certify that on February 13, 2026, this document was served upon Melanie V. Woodward, Counsel for KBW, via electronic mail.

*/s/Michael Williamson*
*Proceeding Pro Se*