**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Michael Williamson,<br><br>Plaintiff,<br><br>v.<br><br>Avidia Bancorp, Inc. and Keefe, Bruyette & Woods, Inc.<br><br>Defendants. | Civil Action No. 1:25-CV-13410-AK |

**MEMORANDUM AND ORDER ON DEFENDANT KEEFE, BRUYETTE & WOODS, INC.'S MOTION TO DISMISS**

**ANGEL KELLEY, D.J.**

Plaintiff Michael Williamson ("Plaintiff") alleges Defendants Avidia Bancorp, Inc. ("Avidia") and Keefe, Bruyette & Woods, Inc. ("KBW") (collectively, "Defendants") violated his contractual right to purchase Avidia's stocks, which Avidia had offered him at a discounted price during its mutual-to-stock conversion. KBW advised Avidia on the conversion and managed its stock offerings, as an investment banker and a broker-dealer. Plaintiff's Amended Complaint alleges breach of contract; breach of implied covenant of good faith and fair dealing; promissory estoppel; and unfair and deceptive business practices against Avidia. Against KBW, Plaintiff alleges intentional interference with prospective economic relationship, intentional interference with contractual relations, and unfair and deceptive business practices.

Before the Court is Defendant KBW's Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). [Dkt. 14]. For the reasons below, Defendant KBW's Motion to Dismiss is **DENIED**.

## I. BACKGROUND

These facts are drawn from the parties' pleadings, briefing on the instant motion, and documents referenced therein. The following facts are undisputed. The action arises out of Defendants' alleged failure to process Plaintiff's stock order to purchase stocks Avidia offered him during its conversion from a mutual to a stock-based corporation.

Plaintiff, a resident of New Hampshire, has been a decade-old depositor of Avidia Bank. Avidia Bank, formerly a Massachusetts-chartered mutual bank, is based in Hudson, MA. As a mutual bank, Avidia Bank's depositors like Plaintiff owned it. In 2025, Avidia Bank sought to convert its legal structure from depositors-owned mutual to a shareholders-owned stock-based corporation. To support the conversion process and stock offerings, Avidia retained KBW, an investment banker and a registered broker dealer. KBW is incorporated in and has its principal place of business in New York.

To raise capital during conversion, Avidia Bank offered its depositors the opportunity to purchase stock at a discounted price in the new Avidia Bancorp, Inc. On March 14, 2025, Avidia formally commenced an initial offering ("Subscription Offering") with the filing of Form S-1 with the Securities and Exchange Commission ("SEC").[1] Because Plaintiff was an Avidia Bank's depositor, he also received Avidia's prospectus, informing him of his priority rights in the Subscription Offering, and a stock order form to purchase the stocks. Plaintiff could purchase up to 40,000 shares at the discounted price of $10.00 per share. To place a stock order, Plaintiff could either deliver the order with payment in-person at Avidia in Hudson, Massachusetts, or mail it to the Stock Information Center at the following address: 305 Madison

---

[1] Parties refer to S-1 to explain relationship between Avidia and KBW, and more so, to elaborate KBW's services to Avidia. Although it is not filed on record, parties agree the Court can rely on this publicly available document to adjudicate on the instant motion.

Avenue, 2nd Floor, Morristown, New Jersey 07960. KBW established, managed, and supervised the Stock Information Center, and processed the stock orders. The stock orders were required to be received by 2:00 PM Eastern Time on June 17, 2026.

On June 9, 2025, Plaintiff mailed his order for 40,000 shares, with a payment of $400,000 via two checks at the following address, with a single-digit error (i.e., 309 in place of 305): 309 Madison Avenue, 2nd Floor, Morristown, New Jersey 07960. Plaintiff addressed the package to Avidia and KBW. According to Plaintiff, the package was delivered to "Defendants' ordering office" on June 16, 2025 at 6:47 PM, and "was subsequently returned to USPS." Even though the address was incorrect, Plaintiff alleges that Defendants received the stock order because the incorrect address does not exist. On June 21, 2025, USPS returned Plaintiff's package. On June 22, 2025, Plaintiff received the package back at his home in New Hampshire. Plaintiff alleges the returned package was resealed after opening, and the sealed envelope containing the checks was opened. As the stock orders at the center were under KBW's care, Plaintiff alleges KBW wrongfully ignored his order after its review.

Plaintiff alleges Defendants ignored his stock order to enrich themselves. Ignoring Plaintiff's stock order kept those shares unsold, and thus eligible to be sold to public ("Community Offering") or certain financial institutions at a rate higher than $10.00 per share offered to the Plaintiff under the Subscription Offering. Of note, KBW's fee depended upon the value of the stock it sold. Compared to the fee of 1.25% of the value of stock sold in Subscription Offering, KBW would earn 3% in Community Offering and 5% on shares sold to the financial institutions. In sum, S-1 estimates approximately $3.3 million payment to KBW for stock offering expenses. [See Avidia Bancorp, Inc. Form S-1 Registration Statement, p. 43]. To benefit from these higher rates, Plaintiff alleges Defendants prevented him from purchasing

Avidia stocks through the Subscription Offering.

Further, Plaintiff avers Avidia's Subscription Offering was oversubscribed; that is, more depositors placed orders than the available shares. Such additional depositors were entitled to 1.8 shares for each dollar that was already in their deposits at Avidia. As a result, Plaintiff would have been allocated 28,080 shares, worth $280,800, for his $15,600 in deposit. But since Plaintiff's stock order was not processed, he alleges being deprived of these shares as well.

Against this backdrop, KBW argues Plaintiff's claims do not arise from KBW's contacts with Massachusetts. As alleged, Plaintiff mailed his stock order and checks to KBW's office in New Jersey; KBW is incorporated and has principal place in New York; KBW's unknown employee in New Jersey opened the stock order and ignored to process it; and lastly, the package was returned to Plaintiff's place in New Hampshire. Plaintiff, however, asserts this Court's personal jurisdiction over KBW is proper as KBW's services to Avidia were directed into Massachusetts, and his claims relate to and arise therefrom.

## II. LEGAL STANDARD

When personal jurisdiction is contested, the plaintiff has the "ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Vapotherm, Inc. v. Santiago, 38 F. 4th 252, 257 (1st Cir. 2022) (quoting Adams v. Adams, 601 F. 3d 1, 4 (1st Cir. 2010)). When courts assess their jurisdiction without an evidentiary hearing, the prima facie standard applies. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F. 3d 42, 51 (1st Cir. 2002); Motus, LLC v. CarData Consultants, Inc., 23 F. 4th 115, 121 (1st Cir. 2022). Under that standard, the plaintiff should "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F. 3d 28, 34 (1st Cir. 2016).

Courts review the pleadings, supplemental filings in the record, and undisputed facts, giving credence to the plaintiff's version of genuinely contested facts. Id. While the plaintiff's burden of proof is "light," it nevertheless requires them not to rely on "mere allegations" alone but to point to specific facts in the record that support their claims. Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F. 3d 1, 8 (1st Cir. 2002) (citing Daynard, 290 F.3d at 51). Courts "'must accept the plaintiff's (properly documented) evidentiary proffers as true' . . . irrespective of whether the defendant disputes them" for the purposes of the instant motion. Adelson v. Hananel, 510 F. 3d 43, 48 (1st Cir. 2007) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F. 3d 138, 145 (1st Cir. 1995)). Courts view these facts in the light most favorable to the plaintiff's jurisdictional claim. Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F. 3d 26, 34 (1st Cir. 1998). Defendants may also offer evidence, but their evidentiary proffers "become part of the mix only to the extent that they are uncontradicted." Adelson, 510 F. 3d at 48 (citing Mass. Sch. of L. at Andover, Inc., 142 F. 3d at 34); see Baskin-Robbins, 825 F. 3d at 34 ("We may, of course, take into account undisputed facts put forth by the defendant.").

## III. DISCUSSION

When determining whether a nonresident defendant is subject to its jurisdiction, "a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'" Baskin-Robbins, 825 F. 3d at 34 (quoting Sawtelle v. Farrell, 70 F. 3d 1381, 1387 (1st Cir. 1995)). In that posture, Plaintiff must satisfy "both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F. 3d 59, 65 (1st Cir. 2014) (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F. 3d 201, 204 (1st Cir. 1994)). The Massachusetts long-arm statute imposes more restrictive constraints than due process requirements for exercise of personal jurisdiction.

SCVNGR, Inc. v. Punchh, Inc., 85 N.E. 3d 50, 53 (2017). See also A Corp. v. All Am. Plumbing, Inc., 812 F. 3d 54, 59 (1st Cir. 2016) (noting recent caselaw suggesting "that the Commonwealth's long-arm statute may impose limits on the exercise of personal jurisdiction 'more restrictive' than those required by the Constitution"). Therefore, the Court's determination under long-arm statute precedes the constitutional inquiry. Id.

For reasons explained below, the Court holds that the exercise of personal jurisdiction over KBW is permitted both under Massachusetts long arm statute and Due Process Clause**.**

**A. Massachusetts Long Arm Statute**

Under the Massachusetts long arm statute, "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth" or "(b) contracting to supply services or things in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a), (b) (1985). Sections 3(a) and 3(b) are to be read together with "arising from" clause. Singer v. Piaggio & C., 420 F. 2d 679, 681 (1st Cir. 1970). That is, in addition to proving KBW transacted business or contracted to supply services in Massachusetts, Plaintiff must prove its claims arise from KBW's such business or services in Massachusetts. Here, Plaintiff does not plead subsections (c) and (d), and accordingly the Court considers personal jurisdiction only under subsections (a) and (b). This Court can exercise personal jurisdiction over KBW under both subsections.

**1. Transacting Business**

Pursuant to subsection (a), "the defendant must have transacted business in Massachusetts" (the transacting business clause), and the plaintiff's "claim must have arisen from the transaction of business by the defendant" (the arisen from clause). Nowak v. Tak How Invs., Ltd., 94 F. 3d 708, 712 (1st Cir. 1996) (quoting Tatro v. Manor Care, Inc., 625 N.E. 2d

549, 551 (Mass. 1994)). Courts construe the transacting business clause "broadly" and "look to whether the defendant attempted to participate in the Commonwealth's economic life." QLS Logistic Servs., LLC v. JAWS Assocs., LLC, 17-CV-11891, 2018 WL 5816342, at *3 (D. Mass. 2018) (quoting Geis v. Nestlé Waters N. Am., Inc., 321 F. Supp. 3d 230, 238 (D. Mass. 2018)).

Starting with the transacting business clause, by advising Massachusetts-based Avidia in its conversion and stock offerings, KBW indeed attempted to participate in the Commonwealth's economic life. KBW advised Avidia on its conversion, managed its stock offerings, and earned fees with reference to the value of the stocks sold. Avidia estimates KBW's stock offering expense to be about $3.3 million. KBW also agreed to provide general financial advisory services to Avidia after its conversion. These services were rendered to Avidia, which is admittedly a Massachusetts bank, with all its branches in state. Therefore, KBW's services to Avidia sufficiently constitute "transacting business" in Massachusetts for the purposes of Section 3(a).

Turning to the ***arisen from*** clause, KBW contends that Plaintiff's claims do not arise out of business that KBW transacted for Avidia in Massachusetts. The Court disagrees. "A claim 'arises from' a transaction of business [in Massachusetts] when it would not have arisen 'but for' the transaction of business in [Massachusetts]." Pettengill v. Curtis, 584 F. Supp. 2d 348, 356 (D. Mass. 2008). The "but for" test is satisfied when the transaction of business in Massachusetts was a "step in the train of events that result[ed] in the [alleged] injury." Tatro v. Manor Care, Inc., 416 Mass. 763, 770–71 (1994) (citations omitted). The claim must have been "made possible by, or lie[ ] in the wake of, the transaction of business in the forum State." Tatro, 625 N.E. 2d at 553 (citations omitted). In this context, a but-for analysis governs. Id. at 553-54.

Here, but for KBW's services to Avidia, notably management of its Subscription

Offering and creation of the Stock Information Center to process stock orders, Plaintiff would not have suffered the alleged harm due to KBW's failure to process his stock orders. In addition, had KBW not transacted its services to Avidia, the Stock Information Center would not have been set up, requiring Plaintiff to mail his stock orders out there. As a result, KBW's transaction of business in Massachusetts was a step in the train of events that resulted in the alleged injury. As a result, this Court can assert personal jurisdiction over KBW under Section 3(a).

### 2. Contracting to Supply Service

For personal jurisdiction over KBW under Section 3(b), Plaintiff must establish: (a) KBW contracted to supply services "in this Commonwealth," and that (b) his claims arise from such supplied services. Under this provision, "in this Commonwealth" refers to "the place where the services or things are to be supplied, rather than referring to the place of the contracting." Droukas v. Divers Training Acad., Inc., 376 N.E. 2d 548, 553 (1978).

KBW agrees that it "contracted with Avidia (a Massachusetts bank) to provide services in connection with its Subscription Offering." KBW, however, contends Plaintiff's claims do not arise from "any services that KBW provided to Avidia in Massachusetts." In this regard, KBW argues that its service to establish, manage, and supervise the Stock Information Center was rendered in New Jersey—where Plaintiff's stock order was received, opened, and disregarded, resulting in Plaintiff's claims. The Court disagrees with such narrow reading of KBW's services to Avidia, as relevant to Plaintiff's claims. KBW's service, in fact, was the management of stock offering, which was supplied to Avidia in Massachusetts, irrespective of KBW's out-of-state acts to help manage stock offerings.

With respect to Avidia's conversion and stock offerings, KBW served, among other things, as an exclusive financial advisor, conversion agent, marketer of stocks for offerings, and

sole bookrunning manager thereof. In these roles, as more relevant to Plaintiff's claims, KBW would market shares in offerings; review all offering documents, including the prospectus, stock order forms and marketing materials; establish, manage, and supervise the Stock Information Center where stock orders were received; and process stock orders and produce daily reports and analysis for Avidia. All these services were undisputedly supplied to Massachusetts-based Avidia bank for its mutual-to-stock conversion—where Plaintiff was a depositor. Thus, the specific out-of-state acts—opening, reviewing, resealing, and returning of Plaintiff's stock order—were not the final services that KBW rendered to Avidia. Instead, those were only the acts in support of the final service, that is, the management of Subscription Offering. In fact, Plaintiff could also participate in Subscription Offering via in-person delivery of his order at Avidia in Massachusetts, with KBW still ultimately responsible for processing stock orders for Avidia and its depositors. Therefore, the Court finds KBW's argument unpersuasive to excise specific acts taken in New Jersey as "services" that it contracted to supply to Avidia. As a result, KBW's conduct sufficiently constitutes services supplied in Massachusetts under Section 3(b).

Similar to the transacting business clause, the but-for test governs whether Plaintiff's claims arise from KBW's services supplied in Massachusetts. As noted above, but for KBW's supply of services to manage Subscription Offerings for Avidia in Massachusetts, Plaintiff's harm, arising out of his participation in such offering, would not have arisen. Therefore, the Court holds personal jurisdiction over KBW under Section 3(b) of long-arm statute.

**B. Due Process**

Having found jurisdiction over KBW under the long-arm statute, the Court turns to the constitutional inquiry. Here, Plaintiff does not argue for general jurisdiction over KBW, and accordingly the Court will only address the specific jurisdiction. The Court may exercise

specific jurisdiction consistent with Due Process Clause only where a defendant has maintained "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Wash., Off. Of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945) (citation modified). For "minimum contacts" to warrant specific jurisdiction over a defendant: (1) the claims must directly relate to the defendant's forum-state activities; (2) the in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state; and (3) the exercise of personal jurisdiction must be reasonable under Gestalt factors. United Elec. Workers v. 163 Pleasant St. Corp., 960 F. 2d 1080, 1089 (1st Cir. 1992).

Here, KBW does not challenge its purposeful availment of Massachusetts, or the reasonableness of this Court's exercise of its jurisdiction over KBW.[2] The Court thus only addresses KBW's challenge to the relatedness prong.

To show relatedness, the plaintiff must demonstrate their "cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." Knox v. MetalForming, Inc., 914 F. 3d 685, 690-91 (1st Cir. 2019) (quoting Harlow v. Children's Hosp., 432 F. 3d 50, 61 (1st Cir. 2005)). This is a "flexible, relaxed standard." N. Laminate Sales, Inc. v. Davis, 403 F. 3d 14, 25 (1st Cir. 2005) (quoting Pritzker v. Yari, 42 F. 3d 53, 61 (1st Cir. 1994)). Relatedness requires only that the claim has a "demonstrable nexus" to the defendant's forum

[2] Even otherwise, the record sufficiently shows that KBW's activities (including its contract with Avidia, and performance thereof, or more generally its business operations) in Massachusetts were voluntary and foreseeable, such that it could reasonably foresee itself to be subject to personal jurisdiction in courts in Massachusetts. Similarly, the Gestalt factors for reasonableness would weigh in KBW's favor, given Defendant does not claim any onerous burden to appear before this Court, and Massachusetts has interest in adjudicating the dispute concerning a transaction that occurred here, and offers a convenient forum for Plaintiff, and to efficiently resolve the dispute as the other Defendant Avidia is already before this Court.

contacts. Mass. Sch. of Law, 142 F. 3d at 34; Knox, 914 F. 3d at 691.

Here, there is demonstrable nexus between KBW's forum-based contacts and Plaintiff's claim because KBW managed the Massachusetts-based Avidia's Subscription Offering, in which Plaintiff alleges KBW prevented him from participating. KBW rendered financial advisory, broker-dealer, and managerial services for Avidia's mutual-to-stock conversion and stock offering. As stated above, Avidia is a Massachusetts-based bank with all its branches in Massachusetts. KBW marketed Avidia's stocks and reviewed stock offering documents including prospectus and stock orders sent to depositors like Plaintiff to invite them to purchase stocks in the Subscription Offerings. In this regard, KBW created the Stock Information Center in New Jersey and processed stock orders there—which could either be mailed directly there or dropped off in-person at Avidia in Massachusetts. Ultimately, KBW was responsible for managing Avidia's stock offerings to depositors like Plaintiff. Here, Plaintiff acted on KBW-prepared materials to participate in KBW-structured Subscription Offering for Avidia and accordingly placed his stock orders, which KBW allegedly failed to process.

Given the scope of KBW's services directed into Massachusetts for Avidia, the acts of reviewing and processing stock orders do not define KBW's overall services to Avidia in Massachusetts. Therefore, even if the Plaintiff's stock orders were received, reviewed, and disregarded in New Jersey, that does not change KBW's contacts in Massachusetts, specifically the management of the Subscription Offering, which ultimately caused Plaintiff to send his stock orders to KBW in New Jersey. While KBW allegedly failed to process stock orders in New Jersey, Plaintiff's claims essentially relate to and arise out of KBW's management of Subscription Offering in Massachusetts. Therefore, Plaintiff satisfies the relatedness prong.

Because KBW's purposeful availment of Massachusetts, and the reasonableness of this

Court's exercise of jurisdiction over KBW, are already undisputed, and Plaintiff's claims are related to KBW's actions, exercising personal jurisdiction over KBW comports with due process requirements.

## IV. CONCLUSION

For the foregoing reasons, Defendant KBW's Motion to Dismiss is **DENIED**.

**SO ORDERED.**

Dated: August 27, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge